STAHL, Circuit Judge.
 

 Robert Rowe was convicted on two counts of bankruptcy fraud in violation of 18 U.S.C. § 152. We overturned his conviction on one of the two counts and remanded for resentencing.
 
 See United States v. Rowe,
 
 144 F.3d 15 (1st Cir.1998)
 
 (“Rowe I”).
 
 Now that resentencing has taken place, Rowe again appeals. For the reasons stated below, we reverse and remand for resentencing.
 

 I.
 

 Background
 

 The facts of this case are not in serious dispute. Our opinion in
 
 Rowe I
 
 sets forth the relevant details:
 

 In September 1992, Rowe filed a personal bankruptcy petition under chapter 7 of the Bankruptcy Code. Doing so obligated him to file with the bankruptcy court a number of bankruptcy schedules that are designed to profile a chapter 7 petitioner’s financial situation. In Schedule A, which directs the petitioner to list all interests in “REAL PROPERTY,” Rowe typed “NONE” in the column where he was asked to provide a “Description and Location of Property.” In Schedule J, which is labeled “CUR
 
 *40
 
 RENT EXPENDITURES OF INDIVIDUAL DEBTOR(S),” Rowe typed “$395.00” in the space [in which] he was to list his “Rent or home mortgage payment.” These two responses were the subjects of the bankruptcy frauds charged in Counts II and III of the indictment.
 

 The government’s theory as to Count II was straightforward: the answer “NONE” in Schedule A was fraudulent because, at the time Rowe filed his petition, he and his ex-wife each had a 50 percent ownership interest in a residence located at 20 Highland Avenue in Nahant, Massachusetts. The government’s theory as to Count III[was] a bit more complicated ... but can be summarized as follows: the answer “$395.00” in Schedule J was fraudulent because, at the time Rowe filed his petition, EDI [a company that he and his brother had created] was paying upwards of $1800 per month in rent for Rowe to live in a house he personally had leased. This house was located at 47 Castle Road in Nahant, Massachusetts. In the government’s view, Rowe had a clear obligation to disclose this rent payment on his Schedule J, but failed to disclose it in order to [conceal his interest in EDI from the bankruptcy court — an act which was itself the subject of Count I of the indictment].
 

 Id.
 
 at 16-17. After an eleven-day trial, a jury acquitted Rowe on Count I, but found him guilty on Counts II and III. Rowe appealed, and although we affirmed his conviction on Count II, we reversed his conviction on Count III, vacated his sentence, and remanded for further proceedings.
 
 See id.
 
 at 24.
 

 Before resentencing could take place, the U.S. Attorney’s Office filed an ethical complaint against Rowe’s attorney with the Massachusetts Board of Bar Overseers (“BBO”) stating that Rowe’s attorney had committed misconduct by making baseless allegations that the government’s case agent had lied to the grand jury and that the prosecution had suborned the use of this perjured testimony. At counsel’s request, the district court continued Rowe’s resentencing while his attorney responded to the BBO complaint. Shortly thereafter, the BBO dismissed the complaint.
 

 In the district court, Rowe’s attorney renewed his allegations of perjury and argued that the government’s pursuit of an ethical complaint against him was retaliatory. He moved for an evidentiary hearing to explore these issues, arguing that proof of government misconduct would entitle his client to a downward departure at sentencing. The district court denied the motion, finding that Rowe’s unsupported allegations of perjury were too conclusory to justify further consideration.
 

 Thereafter, on November 12, 1998, the court sentenced Rowe to eighteen months of imprisonment, twenty-four months of supervised release with a $50 special assessment and a fine of $10,000. Under the United States Sentencing Guidelines (“the Guidelines”), the court’s sentence reflected a base offense level of six,
 
 see
 
 U.S.S.G. § 2Fl.l(a) (Nov.1995), a four level enhancement for an intended loss of more than $20,000,
 
 see id.
 
 § 2F1.1(b)(1)(E), a two level enhancement for the violation of a judicial order or process,
 
 see id.
 
 § 2Fl.l(b)(3)(B), and a two level enhancement for obstruction of justice,
 
 see
 
 U.S.S.G. § 3C1.1 (Nov.1995).
 

 II.
 

 We review the district court’s refusal to hold an evidentiary hearing on the misconduct claim on an abuse of discretion standard.
 
 See United States v. Grant,
 
 114 F.3d 323, 326 (1st Cir.1997).
 

 In the past, we have indicated that “a downward departure could not be employed as a means of reprimanding the government for the ‘false testimony’ of a government agent before a grand jury.”
 
 United States v. Connell,
 
 960 F.2d 191, 196 n. 8 (1st Cir.1992) (quoting
 
 United States v. Valencia-Lucena,
 
 925 F.2d 506, 515 (1st
 
 *41
 
 Cir.1991)). Even so, we have recognized that other kinds of governmental misconduct could be the basis for a downward departure at sentencing.
 
 See United States v. Montoya,
 
 62 F.3d 1, 3-4 (1st Cir.1995) (“[W]here government agents have improperly enlarged the scope or scale of the crime, the sentencing court ‘has ample power to deal with the situation either by excluding the tainted transaction from the computation of relevant conduct or by departing from the [guideline sentencing range].’” (quoting
 
 Connell,
 
 960 F.2d at 196)). Since then, the Supreme Court has suggested that downward departures are broadly available when unusual circumstances distinguish a case from the heartland of the Guidelines.
 
 See Koon v. United States,
 
 518 U.S. 81, 94, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). We have yet to revisit this issue in Koon’s wake.
 

 But here, we need not decide whether
 
 Connell
 
 and
 
 Valencia-Lucena
 
 remain good law. Even if a downward departure could redress the use of perjured grand jury testimony by a government agent, Rowe’s conclusory allegations in this regard did not require an evidentiary hearing. FBI agent Richard Egan provided grand jury testimony that Rowe had transferred his house to his ex-wife after learning that his activities were the subject of a government investigation. Egan admitted at trial that this testimony was in error and that Rowe had in fact retained an ownership interest in the house all along. Egan explained that his grand jury testimony was simply mistaken, based on erroneous information that he had received from Rowe’s previous attorney. Rowe failed to rebut this explanation, and absent any meaningful evidence that Egan knowingly misled the grand jury, there was no reason to believe that he had lied or that the prosecution had suborned the use of perjury.
 

 Against this background, the U.S. Attorney’s decision to file an ethical complaint against Rowe’s attorney cannot be viewed as improper because although the BBO eventually dismissed that complaint, the government had at least a threshold basis for believing that Rowe’s allegations of perjury had been made in bad faith. With these facts in mind, the district court properly concluded that Rowe’s claim of government misconduct was belied by the record and simply was too conclusory to warrant further consideration.
 
 See United States v. Lilly,
 
 983 F.2d 300, 310 (1st Cir.1992) (noting that a criminal defendant is not entitled to an evidentiary hearing on a motion unless he can make an “adequate threshold showing that material facts are in genuine doubt or dispute”);
 
 see also United States v. McGill,
 
 11 F.3d 223, 225 (1st Cir.1993) (“[E]videntiary hearings- on motions are the exception, not the rule.... [A] party seeking an evidentiary hearing must carry a fairly heavy burden of demonstrating a need for special treatment.” (internal citations omitted)).
 

 III.
 

 We now consider Rowe’s claim that the district court erred in arriving at his sentence. ‘We first determine the applicability of [each] guideline to a particular case de novo. After determining the guideline’s scope and meaning, we review the district court’s factual determinations for clear error, giv[ing] due deference to the district court’s application of the guidelines to the facts.”
 
 United States v. Cali,
 
 87 F.3d 571, 575 (1st Cir.1996) (internal quotation marks and citations omitted).
 

 A.
 

 The district court increased Rowe’s base offense level by four to reflect the intended loss from his criminal conduct.
 
 See
 
 U.S.S.G. § 2Fl.l(b)(l)(E) (Nov.1995). In so doing, the court found that Rowe had concealed his interest in the house from the bankruptcy court, that the intended loss from Rowe’s actions amounted to the value of his interest in the house, and that although outstanding loans and attach
 
 *42
 
 ments on the house made the value of his interest unclear, a willing buyer and seller would have valued the property at more than $20,000. Under the Guidelines, the court’s valuation required a four-point increase in Rowe’s base offense level.
 
 See id.
 

 We would have little difficulty accepting the district court’s methodology if it represented a reasonable means of ascertaining Rowe’s intended loss. Because criminal conduct can cause an indeterminate amount of harm, the loss in a particular case “need not be determined with precision.” U.S.S.G. § 2F1.1 app. note 8 (Nov. 1995). A sentencing court “need only make a reasonable estimate of the loss” in light of the information at hand.
 
 Id.
 
 “Courts can, and frequently do, deal with rough estimates,” and as such, “a party dissatisfied with [a] sentencing court’s quantification of the amount of loss ... must go a long way to demonstrate” clear error.
 
 United States v. Rostoff,
 
 53 F.3d 398, 407 (1st Cir.1995).
 

 But even with this deferential standard in mind, the district court’s determination of the loss in this case must be reversed. Rowe was found guilty of committing bankruptcy fraud by submitting bankruptcy schedules that failed to disclose his interest in the residence. The value of his interest, if any, was unclear because although the house if unencumbered was worth between $130,000 and $140,000, two mortgages and a number of attachments appear to have encumbered the property at the time Rowe submitted his fraudulent bankruptcy schedules.
 

 If the amount of these encumbrances was completely unknown, then the district court properly could have resorted to a hypothetical estimate of how a willing buyer and seller would have valued Rowe’s interest in the house. Here, however, there was substantial evidence about the size of the encumbrances. The first mortgage on the property apparently had a balance of $10,500, while the second mortgage allegedly had a balance of $50,000. Moreover, Government Exhibits 10A, 10B, 10C, 10D, 11A, and 11B indicated that there were several attachments on the property, one of which was for $600,000. These obligations arguably rendered Rowe’s interest in the property worthless.
 

 Rather than sorting through this evidence to ascertain the value of the harm that Rowe either caused or intended, the district court stated that “[t]he thing that’s missing is no showing in evidence ... by the Government or by the defendant as to what [he] did owe on the original or other loans at the date that is relevant to the loss calculation.” The court could have conducted an evidentiary hearing to resolve this difficulty, but it did not. Instead, it estimated Rowe’s interest in the property to be worth $20,000 — an amount that was inconsistent with the record and had no discernible connection to the amounts that both the government, which estimated the loss to be $60,000, and Rowe, who estimated the loss to be $0, had proposed. Against this background, the district court’s intended loss calculation was clearly erroneous and must be reversed.
 

 B.
 

 The district court also increased Rowe’s base offense level by two on the grounds that by concealing his interest in the residence, Rowe violated a judicial order or process requiring him to disclose all of his property to the bankruptcy court.
 
 See
 
 U.S.S.G. § 2Fl.l(b)(3)(B) (Nov.1995).
 

 The Guidelines call for a two level enhancement at sentencing when a crime of fraud involves the “violation of any judicial or administrative order, injunction, decree, or process not addressed elsewhere in the guidelines.”
 
 See id.
 
 “[T]he rationale for the enhancement is to redress the ‘aggravated criminal intent’ ” that exists when a defendant engages in wrongful conduct despite a prior order that directs him not to do so.
 
 United States v. Shadduck,
 
 112 F.3d 523, 529 (1st
 
 *43
 
 Cir.1997) (quoting U.S.S.G. § 2F1.1 background). The focus upon heightened criminal intent means that in the case of bankruptcy fraud, the enhancement will not apply automatically whenever someone fails to follow a general set of instructions in a bankruptcy rule or form.
 
 See Shad-duck,
 
 112 F.3d at 529-30. Instead, the enhancement applies only to those who receive a more specific command from the bankruptcy court and break it.
 
 See id.
 

 There was no such command in
 
 Shadduck,
 
 but there was such an order here. Rowe’s petition for bankruptcy did not include a list of his assets. Recognizing this deficiency, the bankruptcy court sent Rowe a notice advising him to disclose his assets in their entirety by filing a Statement of Financial Affairs along with supporting schedules. Unlike a notice of hearing or another informational announcement that a debtor might receive as a matter of course upon filing for bankruptcy,
 
 see Shadduck,
 
 112 F.3d at 530, this notice was specifically directed at Rowe with a tailored command to cure the defects in his original petition so as to provide complete disclosure. Despite a warning that “FAILURE TO COMPLY WILL RESULT IN APPROPRIATE ACTION,” Rowe chose to violate the notice by continuing to conceal his interest in the residence. On these facts, the district court properly concluded that Rowe violated a judicial order or process within the meaning of § 2F1.1(b)(3)(B) of the Guidelines.
 

 C.
 

 The district court also applied a two level enhancement to Rowe’s base offense level on the grounds that he had perjured himself at trial. In the court’s view, “Rowe’s [testimonial] denials of an ownership interest in real property located at 20 Highland Avenue, Nahant, Massachusetts, were untruthful and material” and thereby warranted a sentencing enhancement for obstruction of justice.
 
 See
 
 U.S.S.G. § 3C1.1 (Nov.1995).
 

 Section 3C1.1 of the Guidelines requires the imposition of a two level enhancement if a defendant “willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of [an] offense.” In order for perjury to support an obstruction of justice enhancement, the defendant must have given “‘false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.’”
 
 United States v. D'Andrea,
 
 107 F.3d 949, 958 (1st Cir.1997) (quoting
 
 United States v. Dunnigan,
 
 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993)). We review the court’s factual findings in this regard for clear error.
 
 See D’Andrea,
 
 107 F.3d at 958.
 

 Despite the deferential standard of review that applies, the district court’s decision to apply an obstruction of justice enhancement in this case cannot stand. As the government concedes in its appellate brief, “Rowe admitted at trial that he was an owner of record on the property at all times” and that he had omitted this interest from his schedule of assets. In other words, Rowe conceded that he owned the house with his ex-wife and that he had failed to disclose his interest in the house to the bankruptcy court. Contrary to what the trial court opined at sentencing, Rowe never lied about these aspects of his conduct.
 

 Instead, Rowe simply tried to justify why he did what he did by claiming that he did not disclose the house to the bankruptcy court because he felt that the mortgages and attachments had rendered the asset worthless and because in any event, he verbally had agreed to give his share of any proceeds of a sale to his ex-wife if the property ever could be sold. The import of his testimony was that he did not think that he was legally obligated to list a worthless asset in his bankruptcy filings. Although the jury was entitled to disbelieve Rowe’s claim that he simply had
 
 *44
 
 made a mistake, the mere fact that he tried to explain himself at trial cannot alone support an obstruction of justice enhancement.
 
 See United States v. Akitoye,
 
 923 F.2d 221, 228 (1st Cir.1991) (“[I]f perjury is less than apparent on the record as a whole, with due respect for the trial judge’s coign of vantage and allowing reasonable latitude for credibility assessments, the defendant should be given the benefit of the resultant doubt.”)
 

 IV.
 

 Conclusion
 

 For the foregoing reasons, we vacate Rowe’s sentence and remand for further proceedings consistent with this opinion.
 
 [1]
 

 Reversed.
 

 [1]
 

 . Rowe also contends that the district court’s sentence was vindictive because it included a $10,000 fine that was not imposed when the trial judge originally sentenced him in
 
 Rowe I.
 
 Since the district court will have to resen-tence Rowe in any event, we decline to consider whether the inclusion of the $10,000 fine was vindictive and urge the trial court to consider the defendant’s argument upon remand.