# United States Court of Appeals

## For the First Circuit

No. 07-1410

UNITED STATES OF AMERICA,

Appellee,

v.

NICHOLAS STOUPIS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Lynch, Chief Judge,
Lipez and Howard, Circuit Judges.

Robert F. Casey for appellant.
Randall E. Kromm, Assistant United States Attorney with whom
Michael J. Sullivan, United States Attorney, was on brief, for
appellee.

June 26, 2008

**HOWARD**, **Circuit Judge**.  Nicholas Stoupis pled guilty to mail and wire fraud under 18 U.S.C. §§ 1341 and 1343, and he now appeals the estimate of loss relied upon by the district court in calculating his sentence.  We affirm the sentence imposed by the district court.

## I.

The following facts are uncontested.  From July 2004 to March 2006 Stoupis worked for Northrup Grumman ("NG"), a defense contractor, and was based at a computer help desk at Hanscom Air Force Base in Lexington, Massachusetts.  He embarked upon a scheme to take advantage of his employer's relationship with Cisco Systems, Inc., a vendor of computer networking equipment.

Cisco distributed its products in two different ways: sales to distributors, and direct sales to large customers.[1]  Other than to these large customers, Cisco did not typically retail products to end users.  The armed services, and military contractors such as NG, were among those large customers that bought products directly from Cisco.  Typically, a large customer such as NG would also receive a special service contract allowing for advance replacement of any of Cisco's products that might be recalled.  Should a recall issue, Cisco would ship to NG

_____

[1]Information about Cisco's marketing practices during the relevant time is derived from the testimony and affidavit of Cisco employee Timothy Walker (the "Walker Declaration").  Subsequent to Stoupis's actions, Cisco has, for reasons that will become clear, changed certain of its marketing practices.

replacement[2] equipment without requiring that the recalled equipment first be shipped back. In fact, Cisco only required the customer to report a serial number for the defective product.

Because his job at the computer help desk gave him access to Hanscom Air Force Base's information technology systems, Stoupis was able to create email addresses that appeared to belong to different military personnel. When he saw a Cisco recall notice posted on the Internet for specific equipment, he would use one of the fictitious email addresses to request replacement equipment from Cisco. Stoupis would either select a serial number within the range listed in the recall notice or simply make one up to include in his request. The replacement request would appear to be on behalf of NG or the military, but Stoupis would arrange for the equipment to be shipped to either his house or a relative's house.

Over the course of approximately a year and a half, he received more than ninety shipments of products from Cisco. He stored the products at his home and began selling them through the online retailer eBay. Stoupis made approximately $515,000 by selling the products on eBay. In the course of the sales he sometimes indicated that he was "authorized" to sell the equipment.

In early 2006, law enforcement agents confronted Stoupis and he agreed to cooperate and to turn over the equipment still in

---

[2]The replacement equipment was sometimes new and sometimes "reconditioned" or "refurbished," meaning assembled from used parts.

his possession.  Stoupis pled guilty to two counts of mail fraud and two counts of wire fraud under 18 U.S.C. §§ 1341 and 1343.[3]

Stoupis's Presentence Investigation Report ("PSR") estimated the amount of loss he caused at $7.2 million, and also indicated that he must pay restitution under the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A.[4]  The district court held a hearing in which the government introduced the Walker Declaration, containing detailed product pricing information for Cisco, and also introduced Cisco's own loss calculations based on that information.  The court stated that it believed the appropriate methodology for loss calculation under the Sentencing Guidelines was to take into account the retail value of both the new and the refurbished goods shipped to Stoupis, and the discounted pricing structure available to large customers like

---

[3]The plea agreement contained an appeal waiver, providing that Stoupis waived his right to appeal or collaterally challenge the "imposition by the District Court of a sentence which does not exceed that being recommended by the U.S. Attorney pursuant to this agreement.  Defendant reserves the right to appeal the Court's legal determination of whether retail, wholesale or other value of the stolen merchandise is the appropriate measure of loss in his case under the United States Sentencing Guidelines."

[4]The MVRA requires courts to order restitution in connection with certain specific types of crimes, including offenses against property under title 18.  Stoupis's convictions under §§ 1341 and 1343 qualify under this statute.  Restitution for MVRA purposes requires that a defendant pay to the victim of the property offense "the value of the property on the date of the damage, loss, or destruction" minus "the value . . . of any part of the property that is returned."  18 U.S.C. § 3663A(b)(1)(B).  Thus, "value" for MVRA purposes is distinct from "loss" for Sentencing Guidelines purposes.

military contractors. The court's loss calculation, for Guidelines purposes, was $4.7 million.[5]

Pursuant to U.S.S.G. § 2B1.1(b)(1)(K), the $4.7 million loss resulted in an eighteen-level sentence enhancement, bringing Stoupis's total offense level to twenty-four and producing a Guidelines Sentencing Range ("GSR") of fifty-one to sixty-three months. Stoupis was sentenced to fifty-one months' imprisonment.

Stoupis now appeals the district court's loss calculation, arguing that the court used the wrong methodology.[6]

## II.

The standard of review for interpretations and applications of the Sentencing Guidelines is de novo. See United States v. Innarelli, 524 F.3d 286, 290 (1st Cir. 2008). We review related findings of fact, including the district court's loss calculation estimate of $4.7 million, for clear error. See id.; see also United States v. McCoy, 508 F.3d 74, 78 (1st Cir. 2007).

_____

[5]This amount differs from the PSR loss estimate because the PSR's calculation did not include the large customer discount, and because the Walker Declaration provided more accurate pricing information than had been available at the time of the PSR.

[6]Stoupis appears to suggest that he is also appealing from the district court's order that he must pay restitution in the amount of $3.7 million (a figure arrived at by adjusting the $4.7 million loss calculation to account for the approximately $1 million worth of equipment recovered from Stoupis and returned to Cisco.) We do not consider this argument. The appeal waiver prevents Stoupis from arguing to us that the restitution order was improper; he reserved only the right to appeal the methodology for determining loss under the Sentencing Guidelines, not the restitution order.

The Guidelines do not specify a formula for calculating the loss attributable to a defendant's actions. Rather, the Guidelines commentary suggests basing loss on the "fair market value of the property unlawfully taken or destroyed; or, if the fair market value is impracticable to determine or inadequately measures the harm, the cost to the victim of replacing that property." U.S.S.G. § 2B1.1 cmt. n.3(C) (2007). District courts generally have flexibility in loss calculations. See U.S.S.G. § 2B1.1 cmt. n.3(C) (stating that a court "need only make reasonable estimate of loss . . . based on available information."). "Courts can, and frequently do, deal with rough estimates, and as such, a party dissatisfied with [a] sentencing court's quantification of the amount of loss . . . must go a long way to demonstrate clear error." United States v. Rowe, 202 F.3d 37, 42 (1st Cir. 2000) (internal citation and quotation marks omitted). In Rowe, however, we did find error where the estimates of loss (the value of defendant's house with various encumbrances) were zero (defendant) and $60,000 (government), and the district court simply selected a figure of $20,000 without a hearing. Id. We found that the district court's loss calculation was "inconsistent with the record and had no discernible connection to the amounts" proposed by the parties. Id. We focus here on whether the district court's estimate of the fair market value of Cisco's loss, $4.7 million, was clearly erroneous.

Stoupis argues that the district court erred because it did not use one of his three preferred methods for calculating the loss. Those three methods are as follows: 1) calculating fair market value based on the market for replacement Cisco products; 2) calculating fair market value based on the market for Cisco products without attendant support services; and 3) valuing the loss as the profits he made on eBay.[7] This argument is essentially irrelevant, because the district court was simply not required to use any particular methodology. The court must merely make a "reasonable estimate of loss . . . based on available information." U.S.S.G. § 2B1.1 cmt. n.3(C). See United States v. Carrington, 96 F.3d 1, 6 (1st Cir. 1996) ("Loss need not be determined with precision, and in fact may be inferred from any reasonably reliable information.").

In fact, the district court considered the available information in conducting a hearing that included submissions from Stoupis and the government, and arrived at just such a "reasonable estimate." The court began with an estimate of the retail value of the stolen equipment, if new and purchased at full price: over $10 million. Next, the court reduced that amount to account for the

---

[7]Stoupis also argues that the calculation did not account for the fact that a large portion of the replacement products Stoupis resold were refurbished rather than new. This argument is simply incorrect, as the district court squarely addressed this issue and adjusted the loss calculation to take into account the diminished value associated with refurbished products.

portion of the stolen equipment that was refurbished. This was done on the basis of information from the Walker Declaration reflecting the portion of refurbished products contained within the stolen shipments, and the discounts available on refurbished products. These calculations reduced the estimated loss to $8.1 million. Finally, the court further reduced the amount of loss to $4.7 million, to account for the discount pricing Cisco granted its largest customers (also on the basis of the Walker Declaration).

The court's approach to loss calculation -- measuring fair market value through a price reflecting the market out of which the goods were stolen -- is perfectly consistent with our precedent. See United States v. Coviello, 225 F.3d 54, 62-63 (1st Cir. 2000) (where discount computer products outlet stole software CDs from manufacturer, wholesale price of CDs is appropriate to use as fair market value); see also Carrington, 96 F.3d at 6 (for cars fraudulently obtained from car dealers, fair market value calculation based on retail price of cars was reasonable). Here, where the court valued the stolen equipment using the prices Cisco's largest customers would have paid for it, $4.7 million is a reasonable estimate.

Moreover, each of the three methods Stoupis advocates suffer from their own flaws. The first two methods suggest that fair market value should have been calculated with reference to a

different market.[8]  Where a victim-seller does not operate in a particular market, it is not appropriate to value products based on a market in which the victim-seller does not compete.  See United States v. Warshawsky, 20 F.3d 204, 213 (6th Cir. 1994) (where auto parts stolen from GM assembly plant and sold to wholesale dealers, and GM operated entirely in wholesale market, wholesale and not retail price was appropriate for valuing loss caused by theft because "retail market has literally no connection to this case.") Here, Cisco neither sells equipment specifically as "product replacement," nor does it sell equipment without support services. Thus, reference to either of these two markets would be inappropriate.

The third method Stoupis advocates, that the district court should have measured loss through his profits from selling these goods on eBay, is even more flawed.  The Guidelines state that a court may use the defendant's gain "as an alternative measure of loss only if there is a loss but it reasonably cannot be determined."  U.S.S.G. § 2B1.1 cmt. n.3(B) (emphasis added).  Where there is evidence of the value of the products in the market within which the victim operated, the Guidelines and our precedent are united against using an alternative measure like defendant's

---

[8]At sentencing, Stoupis argued that loss should have been calculated as Cisco's "replacement cost" for the stolen equipment, measured through Stoupis's eBay profits.  On appeal Stoupis did not use the term "replacement cost," and we do not address that concept here.  See Zannino, 895 F.2d at 17.

profits.  See Coviello, 225 F.3d at 64 (where stolen good has a market value, no reason to abandon market value in favor of measuring gain to victim).  Stoupis does not even make an argument that the loss "reasonably cannot be determined" and the district court should have used his profits as an estimate.  See, e.g., United States v. Gottfried, 58 F.3d 648, 651 (D.C. Cir. 1995) (where lost products were government documents and market value could not be determined, a different method to estimate loss must be used).  He instead argues that the $515,000 figure is the actual market value of the goods.  As we have just stated, where a seller does not participate in a market -- here, directly retailing equipment on eBay -- that market is not relevant for estimating the fair market value of the loss.[9]

Stoupis has failed to make a showing that the district court clearly erred in calculating the loss he caused for purposes of the Guidelines, and thus we **affirm** his sentence.

---

[9]We also note that in estimating the price of the stolen equipment, the district court generously gave Stoupis the benefit of the largest possible large customer discount.  See Coviello, 225 F.3d at 62-63 (without any evidence that stolen products had been intended for below-wholesale sales, use of full-wholesale price to calculate loss was appropriate where the victim-seller "would have had the option to dispose of [the property] at the higher rather than the lower price." (citing United States v. Colletti, 984 F.2d 1339, 1345 (3d Cir. 1992))).