**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 5, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

TORRENCE K. JAMES,

Defendant-Appellant.

No. 08-1292

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:07-CR-000362-WDM-1)**

---

Submitted on the briefs.[*]

David M. Gaouette, Acting United States Attorney, Andrew A. Vogt, Assistant United States Attorney, Denver, Colorado, for Plaintiff-Appellee.

Elizabeth L. Harris, Jacobs Chase Frick Kleinkopf & Kelley, LLC, Denver, Colorado, for Defendant-Appellant.

---

Before **BARRETT, ANDERSON**, and **BRORBY**, Circuit Judges.

---

**BRORBY**, Circuit Judge.

---

[*]  After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

Appellant Torrence James pled guilty to one count of wire fraud and aiding and abetting, in violation of 18 U.S.C. §§ 2 and 1343, was sentenced to thirty months imprisonment and three years supervised release, and was ordered to pay $467,767.31 in restitution, both jointly and severally with two other co-conspirators. Mr. James appeals the district court's order of restitution, contending it erred because the amount is unsupported by the evidence and greater than the actual losses to all three victim mortgage holders at issue. For relief, he asks this court to remand his case to the district court to enter a corrected restitution order. In response, the government concedes the district court order of restitution exceeds the actual losses sustained by MortgageIt and Specialized Loan Servicing – two of the three victim mortgage holders. However, it disputes Mr. James's proposed calculation as to the amount of restitution owed to them and to the other mortgage holder, Freedom Mortgage. It asks this court to remand with instructions for the district court to modify its restitution order regarding the amount of loss attributable to two of the mortgage holders based on what it asserts are the correct calculations and affirm the district court's restitution order as to the amount attributable to the third victim mortgage holder, Freedom Mortgage. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and remand, in part, and affirm, in part, the district court's restitution order.

## I. Background

For the purposes of this appeal, we find it unnecessary to recount in full detail the interstate wire fraud transfer scheme involved in the count charged, other than to provide first a general account of the scheme and then some of the relevant undisputed facts underlying that scheme and the parties' arguments concerning calculation of the actual losses attributable to each victim mortgage holder and the proper restitution to be awarded.

In short, in late 2006, Mr. James and others arranged for and facilitated Tremayne Miller's purchase of three homes using the name and identification of an individual whose identity had been stolen. After Mr. Miller obtained loans for the purchase of those homes from three lenders by using materially false and fraudulent information, he received money from those lenders for improvements to the properties which were never made and then failed to pay on the loans, causing the foreclosure of those properties at a financial loss to the mortgage holders.

More specifically, Mr. Miller purchased three homes in Colorado, located at: (1) Stardance Circle, in Longmont (Stardance property); (2) Emerson Street, in Denver (Emerson property); and (3) Stay Sail Drive, in Windsor (Stay Sail property). The Stardance property was purchased on November 14, 2006, with a

loan from MortgageIt in the amount of $975,000. Similarly, the Emerson property was purchased on November 30, 2006, with a loan from First Magnus Financial in the amount of $760,000. Finally, the Stay Sail property was purchased on December 4, 2005, with a loan from Freedom Mortgage in the amount of $650,000. In each instance, the lenders disbursed funds using interstate wire transfers. Because the loans covered one hundred percent of the purchase price, each lender was required to separate the loan amount into first and second mortgages, and, therefore, each property was financed with two separate loans from each of the lenders. After closing on each property, the original mortgage lenders either sold one or both first and second mortgages to another entity, as follows:

| Property | Original Lender | Total Amount Financed | Amt. of 1st Mortgage & [Holder] | Amt. of 2nd Mortgage & [Holder] | Miscellaneous |
|---|---|---|---|---|---|
| Stardance Circle | MortgageIt | $975,000 | $780,000 [Unknown] | $195,000 [MortgageIt] | MortgageIt sold and then repurchased the 2nd mortgage from Citibank for $213,785.11. |
| Stay Sail Drive | Freedom Mortgage | $650,000 | $520,000 [Specialized Loan Servicing] | $130,000 [Freedom Mortgage] | |
| Emerson Street | First Magnus Financial | $760,000 | Unknown amount [Unknown] | Unknown amount [Unknown] | The original lender, First Magnus Financial, declared bankruptcy and provided no additional information on current mortgage holders. |

-4-

As part of the scheme to defraud, Mr. Miller convinced the property sellers to "kick back" a portion of the selling price or loan money to him to ostensibly cover needed repairs on the property. These funds were disbursed at closing by the original lenders and, in two instances, the funds were distributed to a shell corporation set up by Mr. James called T&T Contractors. In the third instance, for the Emerson property, the money was funneled to another account, under another name. The kickbacks to the defendants on the properties totaled $395,783, and none of that money was ever used for improvements, nor were the properties ever occupied. Eventually, after no payments were made on the loans, the mortgage holders foreclosed on the properties and sold those properties at foreclosure sales for less than the loan amounts due.

Following Mr. James's arrest and indictment, he pled guilty to one count of wire fraud and aiding and abetting, in violation of 18 U.S.C. §§ 2 and 1343, regarding the bank loan and "kick back" scheme involved with the purchase of the three homes. Pursuant to the plea agreement, Mr. James agreed to pay restitution to the victim mortgage holders "in amounts to be determined by the time of sentencing." R., Vol. 1, Doc. 93 at 1. At the plea hearing, the parties and the district court confirmed that no restitution amount had yet been determined and no agreement as to the amount of restitution was reached.

Following Mr. James's guilty plea, a probation officer prepared a presentence report calculating his sentence under the applicable 2007 United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). The probation officer calculated Mr. James's base offense level at seven under U.S.S.G. § 2B1.1(a)(1). The probation officer then applied a fourteen-level upward adjustment under § 2B1.1(b)(1)(H) because the loss attributable to the defendant was more than $400,000 but less than $1,000,000. To arrive at this figure, the probation officer subtracted the total amount of resale of the properties after foreclosure from the total amount financed through loans to Mr. Miller, and then deducted all identified interest, fees, penalties, and liquidation expenses, for a total loss amount of $948,082.31. The following chart breaks down information provided in the presentence report:

| Property Address | Original Lender | Total Amount Financed | Date Resold | Amount of Resale | Actual Loss | Lender Funds Distributed for Improvements |
|---|---|---|---|---|---|---|
| Stardance Circle | MortgageIt | $975,000 | 04/30/08 | $623,900 | $351,100 | $176,865 to T&T Contr. |
| Emerson Street | First Magnus Financial | $760,000 | 01/04/08 | $417,000 | $343,000 | $98,000 to Melanie Caple |
| Stay Sail Drive | Freedom Mortgage | $650,000 | 04/11/08 | $428,500 | $253,982.31 (per lenders) | $120,918 to T&T Contr. |
| | | | | | **TOTAL ACTUAL LOSS:** $948,082.31 | **TOTAL**: $395,783 |

After applying a two-level increase in the offense level for use of

fraudulent identification and a three-level decrease for acceptance of responsibility, the probation officer calculated the total offense level at twenty, which, together with Mr. James's criminal history category of III, resulted in a Guidelines range of forty-one to fifty-one months imprisonment. However, pursuant to an agreement between the parties, they requested a downward variant thirty-month sentence based, in part, on the lengthy sentence Mr. James received in another case; accordingly, the district court ultimately imposed a thirty-month term of imprisonment.

In recommending the amount of restitution, the probation officer determined the actual losses due to foreclosure sales in the amount of $948,082.31 was an inappropriate method for calculating the amount of restitution due under 18 U.S.C. § 3663A because not all of the lenders had retained the original mortgages and, therefore, did not suffer any actual loss, and some of the subsequent mortgage holders could not be identified. According to the probation officer, the only confirmed, reported losses for the purpose of restitution involved only three of the victim mortgage holders – MortgageIt, Specialized Loan Servicing, and Freedom Mortgage – which submitted loss statements. The probation officer calculated the losses they sustained as follows:

| Property | Mortgage Holder | Mortgage Held | Amount of Loss | Miscellaneous |
|---|---|---|---|---|
| Stardance Circle | MortgageIt | 2nd mortgage | $213,785 | Cost of its repurchase of 2nd mortgage from Citibank; original amount of 2nd mortgage was $195,000 |
| Stay Sail Drive | Specialized Loan Servicing | 1st mortgage | $123,982.31 | |
| Stay Sail Drive | Freedom Mtg. | 2nd mortgage | $130,000 | |
| Emerson Street | Unknown (original mtg. holder was Financial Corp.) | Unknown | Unknown | First Magnus declared bankruptcy and no additional information was submitted by it as to the 1st or 2nd mortgage holders or its losses, if any. |
| | | | **TOTAL AMOUNT OF LOSS:** $467,767.31 | |

As shown, the recommended restitution amount, as estimated by the probation officer, was $467,767.31. Because no information could be obtained as to losses by the mortgage holders retaining the mortgages on the Emerson property, no restitution was awarded regarding that $760,000 loan and it is not at issue on appeal.

Mr. James objected to the presentence report concerning the recommended amount of restitution, generally claiming he did not know if the claimed losses were accurate for the purpose of calculating the amount of loss or restitution. Nevertheless, at sentencing, Mr. James's attorney ultimately agreed with the recommended restitution amount by stating, "[s]o the basic way the probation

officer addressed this is I think appropriate." R., Vol. 3 at 4. At the conclusion of the sentencing hearing, the district court ordered Mr. James to pay the amount of restitution recommended by the probation officer in the amount of $467,767.31.[1]

## II. Discussion

On appeal, Mr. James claims the district court erred because the amount of restitution is unsupported by the evidence and greater than the three identified mortgage holders' actual losses. To the extent he did not object to the amount of restitution at sentencing but instead acquiesced, he acknowledges our review is for plain error, with which the government agrees. The government also submits that certain discrepancies in the awarded restitution occurred which constitute an extraordinary circumstance seriously affecting Mr. James's substantial rights and the fairness and integrity of portions of the court's restitution order, requiring remand for correction. As a result, we begin with a discussion of our standard of review.

---

[1] As Mr. James contends, the district court indicated the restitution amount of $467,767.31 was imposed pursuant to the plea agreement. However, as Mr. James clarifies, neither the plea agreement nor the colloquy at the plea hearing suggest he agreed to that specific amount. Instead, as Mr. James points out, he did not agree to any specific amount but agreed to pay actual losses to the affected mortgage holders in an amount to be determined by the time of sentencing.

Generally, "[w]e review the district court's application of the [Mandatory Victims Restitution Act[2]] *de novo*, review its factual findings for clear error and review the amount of restitution awarded for abuse of discretion." *United States v. Gallant*, 537 F.3d 1202, 1247 (10ᵗʰ Cir. 2008), *cert. denied*, ___ S. Ct. ___, 2009 WL 721006 (U.S. Apr. 20, 2009) (No. 08-9301). However, in this case, the parties agree Mr. James did not object to the calculation or amount of the restitution awarded at sentencing so that plain error review is appropriate for reviewing the restitution awarded. *See United States v. Smith*, 156 F.3d 1046, 1057 (10ᵗʰ Cir. 1998). Accordingly, we apply plain error review to Mr. James's claims. For Mr. James to prevail on his plain error argument regarding the amount of restitution, he must "'show clear or obvious error that affected his substantial rights, and that seriously affected the integrity of the judicial proceedings.'" *United States v. Johnson*, 183 F.3d 1175, 1179 (10ᵗʰ Cir. 1999) (quoting *United States v. Hatatley*, 130 F.3d 1399, 1405 (10ᵗʰ Cir. 1997)). We have held a district court may not order restitution in an amount that exceeds the actual loss caused by the defendant's conduct, which would amount to an illegal sentence constituting plain error. *See Smith*, 156 F.3d at 1057.

---

[2] We also refer to the Mandatory Victims Restitution Act of 1996 as the "Act" or the "MVRA." *See* Pub. L. No. 104-132, 110 Stat. 1227 (codified principally at 18 U.S.C. § 3663A and enforced under 18 U.S.C. § 3664, as provided in § 3663A(d)).

Applying our plain error review, we address Mr. James's claims broken down by property, as follows:

### A.  Stardance Property

#### 1.  Offset Claim Regarding First Mortgage on Stardance Property

Mr. James points out that while MortgageIt sold the first mortgage on the Stardance property to another unidentified entity for $780,000, the probation officer failed to reduce its restitution award amount for the second mortgage (the one MortgageIt retained) with the profit it made from the sale of the first mortgage.  As a result, he claims the amount of restitution awarded to MortgageIt on the second mortgage should be reduced or offset by any profit it made on its sale of the first mortgage.  The government disagrees, noting that despite its and the probation officer's best efforts, no documentation on the first mortgage transaction was available, and, therefore, the district court properly did not engage in speculation by offsetting profits from the sale of that mortgage. Because Mr. James raises the same claim with respect to the Stay Sail property, we will address this issue later in our discussion.

#### 2.  Claim Regarding Second Mortgage on Stardance Property

Mr. James contends, and the government agrees, MortgageIt was improperly awarded $18,785.11 more in restitution than it should have been

awarded on the second mortgage for the Stardance Property. In arriving at this figure, the parties agree the second mortgage on the property in the amount of $195,000 was sold to Citibank and then subsequently repurchased by MortgageIt from Citibank for $213,785.11. While MortgageIt claimed a loss of the buy-back amount of $213,785.11 from Citibank, Mr. James suggests his fraudulent conduct had nothing to do with the fact MortgageIt later repurchased the loan from Citibank at a higher amount than the initial loan amount. As a result, he claims the amount of restitution should be the original second mortgage loan amount of $195,000, which is $18,785.11 less than the amount claimed as a loss by MortgageIt and applied by the probation officer and the district court. The government agrees the loss to MortgageIt was "inexplicably determined to be $18,785.11 greater than the amount of the second mortgage loan." Ape. Br. at 7. As the parties both agree, the amount awarded exceeds the loss caused by the defendant's conduct and, therefore, amounts to an illegal sentence. *See Smith*, 156 F.3d at 1057. As a result, we conclude plain error occurred warranting remand of this portion of the restitution award to the district court with instructions to reduce the restitution amount to MortgageIt by $18,785.11. *Id.*

## B. Stay Sail Property

### 1. Claim Regarding First Mortgage on Stay Sail Property

Mr. James contends, and the government agrees, the probation officer

incorrectly calculated the restitution amount awarded to Specialized Loan Servicing, the first mortgage holder on the Stay Sail property. They disagree, however, on whether the corrected restitution award should be calculated by applying the actual foreclosure sale amount on that property, at $428,500, or the assessed value of that property, at $468,000. Specifically, the government agrees with Mr. James that when calculating the loss to Specialized Loan Servicing the probation officer erred in relying on that mortgage holder's stated loss calculations, which included an inaccurate foreclosure sale price of $396,017.69, rather than the correct foreclosure sale price of $428,500. As Mr. James explains, the probation officer subtracted the lender's inaccurate foreclosure sale amount of $396,017.69 from the original first mortgage loan amount of $520,000, for a recommended actual loss to Specialized Loan Servicing of $123,982.31. Both Mr. James and the government agree that if the correct foreclosure sale amount of $428,500 had been deducted from the original first mortgage loan amount of $520,000, it would have resulted in an actual loss of $91,500, rather than the loss of $123,982.31. Thus, Mr. James claims that, at a minimum, the restitution amount should be reduced from $123,982.31 to $91,500 – a difference of $32,482.31. The government agrees this is the amount by which the restitution award should be reduced in regard to the Stay Sail property.

However, Mr. James alternatively suggests the loss to Specialized Loan

Servicing should not be calculated based on the foreclosure sale price of $428,500 but should be calculated using the assessed value of the home, which the Larimer County Assessor's Office valued at $468,000 weeks after the foreclosure sale on the property. Mr. James makes this claim, even though he acknowledges the probation officer used the foreclosure sale price to determine the other mortgage holders' losses, rather than the assessed value. By applying the assessed value, Mr. James asserts the amount of restitution should be the difference between the original first mortgage loan amount of $520,000 and the assessed value of $468,000, for an actual loss of only $52,000. Thus, Mr. James is alternatively claiming the restitution award should be reduced from $123,982.31 to $52,000 – a difference of $71,982.31. In support, he states the assessed value of the Stay Sail property is a better measure of the value of the property returned to the mortgage holder under 18 U.S.C. § 3663A(b)(1)(B)(ii), which requires the court to reduce the restitution award by the amount of the value of any part of the property returned to the victim. Mr. James also asserts that under § 2B1.1 cmt. n.3(C)(i) and our decision in *United States v. Messner*, 107 F.3d 1448 (10th Cir. 1997), loss is ordinarily calculated based on fair market value.

The government disagrees, arguing assessor valuations of real estate for tax purposes are typically based on sales prices of similar properties within a specified time period and are therefore somewhat historical in nature and lag

-14-

behind price changes in a rapidly changing market. As a result, it claims no better measure exists as to what a victim's actual loss is after foreclosure than the sale to a ready, willing, and able buyer in an arm's length transaction.

As the parties agree, the district court erred in applying an inaccurate foreclosure sale amount in calculating the amount of restitution awarded to Specialized Loan Servicing, thereby warranting plain error sufficient to remand the restitution award to the district court for entry of a corrected restitution amount. The issue now before us is whether the district court should continue to apply the foreclosure sale amount (as corrected) in calculating the amount of restitution, or, as Mr. James claims, it should be directed to apply the fair market value in calculating the restitution amount to be awarded to Specialized Loan Servicing. In addressing this issue, we are guided by our and other case law, as well as the language in 18 U.S.C. §§ 3663A and 3664.

Under the MVRA, when an offense involves a scheme, conspiracy, or pattern of criminal activity, restitution may be ordered for any victim directly harmed by the defendant's conduct. *See* 18 U.S.C. § 3663A(a)(2). Title 18 U.S.C. § 3663A, states, in part:

> The order of restitution shall require that such defendant--
>  (1) in the case of an offense resulting in damage to or loss or destruction of property of a victim of the offense--

(A) return the property to the owner of the property ...; or
(B) if return of the property ... is impossible, impracticable, or inadequate, pay an amount equal to--
(i) the greater of--
(I) the *value* of the property on the date of the damage, loss, or destruction; or
(II) the *value* of the property on the date of sentencing, less
(ii) the *value* (as of the date the property is returned) of any part of the property that is returned.

18 U.S.C. § 3663A(b)(1)(A) and (B) (emphasis added). As the Second Circuit suggests, § 3663A generally uses the term "value," and does not limit calculation of "value" only to the use of the "fair market value" of the property at issue. *See United States v. Boccagna*, 450 F.3d 107, 114 (2d Cir. 2006). Instead, subsection (i) of § 3663A(b)(1)(B) "references 'the *value* of the [victim's] property,'" and "[s]ubsection (ii) references 'the *value* ... of any part of the property that is returned,' in other words, the offset value." *Id.* (quoting § 3663A(b)(1)(B)(i) and (ii)). Thus, it instructs the court on *what* to value – the property – and *when* to value it – on the date of the damage, loss, or destruction; or on the date of sentencing, whichever is greater; or, in the case of the offset value, on the date the property is returned. *See id.* However, the statute is silent on the question of *how* the referenced property is to be valued. *Id.* (relying, in part, on *United States v. Simmonds*, 235 F.3d 826, 831 (3d Cir. 2000)). As the *Boccagna* court points out, "nowhere does the statute reference 'fair market value' as the only measure to be used in making the restitution calculations contemplated by § 3663A(b)(1)(B)," but, instead, it "appears to contemplate the exercise of

-16-

discretion by sentencing courts in determining the measure of value appropriate to restitution calculation in a given case." 450 F.3d at 114-15. This is demonstrated further by § 3664(f)(1)(A), which provides, in part, a '"court shall order restitution ... in the full amount of each victim's losses *as determined by the court* ....'" *Id.* (quoting 18 U.S.C. § 3664(f)(1)(A)).

As the Second Circuit further points out, other courts have recognized that methods other than fair market price may be used in calculating property values, such as using the foreclosure price as a measure in calculating a property's value in bankruptcy proceedings or the replacement price in calculating a property's value for restitution under §§ 3663A and 3664. *See id.* at 115 (relying on *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 543 n.7 (1994), and *Simmonds*, 235 F.3d at 832). Indeed, other courts have specifically recognized or used the foreclosure sale price as a reasonable method of determining the amount of the restitution award under § 3663A. *See United States v. Innarelli*, 524 F.3d 286, 288-89, 294 (1st Cir.) (remanding because district court "did not offset the amount recovered [by the lender] through the resale of the [real] properties after foreclosure, as required by statute"), *cert. denied,* 129 S. Ct. 350 (2008); *United States v. Berger*, 473 F.3d 1080, 1104, 1108 (9th Cir. 2007) (upholding as reasonable restitution award to banks that deducted percentage of money recovered on foreclosed collateral from the original loan amount); *United States v. Oladimeji*, 463 F.3d

152, 160 (2d Cir. 2006) (recognizing in fraud scheme that loan amount for purchase of real property must be offset with any receipt of loan payments or proceeds obtained from foreclosure of the real property).  Given § 3663A generally uses the term "value" and does not require the use of the term "fair market value," the Second Circuit in *Boccagna* construed "'value' as used in the MVRA to be a flexible concept to be calculated by a district court by the measure that best serves Congress's statutory purpose."  450 F.3d at 115.

Indeed, this approach allows the district court to determine in each circumstance the best measure of value for the purpose of calculating the actual loss in awarding restitution.  Such an approach, however, must keep in mind that the purpose of restitution is not "to punish defendants or to provide a windfall for crime victims, but rather to ensure that victims, to the greatest extent possible, are made whole for their losses."  *United States v. Parker*, 553 F.3d 1309, 1323 (10th Cir. 2009) (internal quotation marks and citation omitted).  In making this determination, "[a] sentencing court may resolve restitution uncertainties with a view towards achieving fairness to the victim, so long as it still makes a reasonable determination of appropriate restitution *rooted in a calculation of actual loss*."  *Gallant*, 537 F.3d at 1252 (internal quotation marks and citation omitted) (emphasis added).

In this instance, the district court determined the best measure of calculating Specialized Loan Servicing's actual loss was by using the amount of money it procured from the foreclosure sale and then subtracting that amount from the amount of the mortgage on which Mr. James had defaulted. If the district court had used the assessed value instead, which is an approximate value of the property, that measure would not have as closely represented the "*calculation of actual loss*" incurred by Specialized Loan Servicing. In other words, the assessed value of $468,000 might represent the approximate value of the property, but not best represent the actual loss Specialized Loan Servicing experienced when it sold the property at foreclosure for the lower price of $428,500. Because, in this case, the foreclosure price method more closely reflects the actual loss Specialized Loan Servicing experienced, we cannot say the district court's method of using that value was unreasonable or that it otherwise erred in using that valuation method in determining the amount of restitution under the MVRA.

Nevertheless, Mr. James also asserts that under U.S.S.G. § 2B1.1 cmt. n.3(C)(i) and our decision in *Messner*, loss is ordinarily calculated based on fair market value. As Mr. James asserts, in *Messner* we held that "the amount of loss is usually determined by an item's fair market value." 107 F.3d at 1456. However, in that case, we were discussing loss for the purpose of calculating the

defendant's sentence under the Guidelines, as opposed to restitution owed to any victims under the MVRA. *Id.* at 1455-56. In addition, in *Messner*, we held that market value is not an appropriate measure of loss if that value is "inadequate to compensate for the victim's harm." *Id.* at 1456. As we previously pointed out, in this case, calculating Specialized Loan Servicing's actual loss using the foreclosure sale amount more accurately measures its loss than using the property's assessed value. Finally, even if the court used the Guidelines commentary to determine the restitution amount, instead of 18 U.S.C. §§ 3663A and 3664, the Guidelines commentary to which Mr. James refers, suggesting loss be calculated using the "fair market value of the property," is merely a suggestion which the district court generally has flexibility in using in determining loss calculations. *See United States v. Stoupis*, 530 F.3d 82, 84-85 & n.4 (1st Cir. 2008) (recognizing that "'value' for MVRA purposes is distinct from 'loss' for Sentencing Guidelines purposes" and commenting on U.S.S.G. § 2B1.1 cmt. n.3(C)(i)).

For these reasons, we remand Specialized Loan Servicing's restitution award to the district court with instructions to use the foreclosure sale amount of $428,500, which the parties agree is the correct foreclosure price, so that when that amount is deducted from the original first mortgage loan amount of $520,000, the actual loss is $91,500, rather than the inaccurate loss of $123,982.31

previously calculated by the district court, for a reduction in the restitution award to Specialized Loan Servicing in the amount of $32,482.31.

## 2. Offset Claims Regarding Second Mortgages on Stay Sail and Stardance Properties

Like his offset claim on the Stardance property involving MortgageIt, Mr. James claims restitution to Freedom Mortgage on its second mortgage for the Stay Sail property should be offset by any profit it made in selling the first mortgage.[3] As relief, he asks this court to remand the restitution awards to both MortgageIt and Freedom Mortgage to the district court to enter a corrected restitution order which would offset or reduce the amount of restitution awarded both of them by the amount of profit they made on selling the other mortgages on those properties. Mr. James suggests his request for an offset regarding these profits "amounts to more than mere speculation," given "MortgageIt sold the second mortgage to Citibank and repurchased it for $18,785 more than the original loan amount [–] a difference that might have represented MortgageIt's initial profit on the transaction." Apt. Br. at 17. As previously noted, the government disagrees any restitution award should be offset by these alleged profits, asserting that despite

_____

[3] Mr. James points out conflicting evidence exists as to whom Freedom Mortgage originally sold the first mortgage; i.e., the Winter Group or the current first mortgage holder, Specialized Loan Servicing. In any event, he acknowledges that at the time of foreclosure Specialized Loan Servicing held the first mortgage and asserts that, regardless of which entity the first mortgage was originally sold to, the restitution award should be offset by any profit.

its and the probation officer's best efforts, no documentation on those transactions was available, and, therefore, the district court properly did not engage in speculation in offsetting restitution to the mortgage holders with profits from the sale of the other mortgages.

We have held "[a] restitution order must be specific in a dollar amount that is supported by evidence in the record" but that "the determination of an appropriate restitution is by nature an inexact science," *United States v. Williams*, 292 F.3d 681, 688 (10th Cir. 2002) (internal quotation marks and citation omitted), so that absolute precision is not required. *See Gallant*, 537 F.3d at 1252. Thus, "[t]he court need only make a reasonable estimate of the loss, *given the information available*." *Id.* (emphasis added).

In estimating the loss, a "sentencing court is required to 'order the probation officer to obtain and include in' the [presentence report] 'information sufficient for the court to exercise its discretion in fashioning a restitution order,'" and the presentence report "'shall include, *to the extent practicable*, a complete accounting of the losses to each victim.'" *United States v. Barton*, 366 F.3d 1160, 1165 (10th Cir. 2004) (quoting 18 U.S.C. § 3664(a)) (emphasis added). "'Any dispute as to the proper amount ... of restitution shall be resolved by the court by the preponderance of the evidence,'" and "'[t]he burden of demonstrating

-22-

the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government.'" *Id.* (quoting 18 U.S.C. § 3664(e)). However, plain error review on appeal now requires Mr. James to show a clear or obvious error affecting his substantial rights that seriously affected the integrity of the judicial proceedings. *See Johnson*, 183 F.3d at 1179. Mere conjecture or speculation on appeal as to whether a victim lender recouped or recovered part of a loan is insufficient to vacate a restitution order, *see Oladimeji*, 463 F.3d at 160, and clearly this applies to mere conjecture as to any profit and the amount of such profit obtained as part of a loan transaction.

Presumably, as Mr. James claims, the mortgage holders made some profit when they sold the other mortgages they held on the properties. However, in this case, the government represents the presentence report included, to the extent practicable, a complete accounting of the losses to each victim and that the government otherwise provided all of the documentation it could obtain on restitution owed to MortgageIt and Freedom Mortgage so that it has arguably met its burden of demonstrating the actual loss sustained. In addition, Mr. James did not raise an objection with regard to these offset claims, so the possibility of obtaining such evidence or information was not discussed or disputed before the district court. We also note Mr. James has provided no specific information on appeal with respect to the amount or percentage of profits to be used to offset the

restitution awards and neither party has indicated that additional documentation or information is or will be available for consideration by the district court on remand. Moreover, Mr. James's assertion that the amount for which MortgageIt repurchased the mortgage from Citibank "might have represented MortgageIt's initial profit on the transaction" is purely speculative. Under the circumstances presented, it appears the district court made a reasonable estimate of loss for the purpose of calculating the restitution award based on the best information available to it, *see Gallant*, 537 F.3d at 1252, and that no additional information is or will be available for consideration by it on remand. For these reasons, we conclude Mr. James has not met his burden of establishing plain error sufficient to warrant remand on the offset issue he now raises on appeal.

III. Conclusion

We **REMAND**, in part, and **AFFIRM**, in part, the district court's restitution order, for the reasons set forth herein. Specifically, we **REMAND** to the district court the $213,785.11 restitution award to MortgageIt, ordering it to reduce it by $18,785.11, for a total corrected restitution award amount of $195,000.00; **REMAND** to the district court the $123,982.31 restitution award to Specialized Loan Servicing, ordering it to reduce it by $32,482.31, for a total corrected restitution award amount of $91,500.00; and **AFFIRM** in all other

respects the restitution awards made by the district court, including the

$130,000.00 restitution award to Freedom Mortgage.