**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 17, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

RYAN JACOB HOWARD,

     Defendant - Appellant.

No. 17-6125

_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:16-CR-00142-C-1)**
_____

Submitted on the briefs:[*]

William P. Earley, Assistant Federal Public Defender, Oklahoma City, Oklahoma, for Defendant - Appellant.

Mark A. Yancey, Acting United States Attorney, Amanda Maxfield Green, Assistant United States Attorney, Oklahoma City, Oklahoma, for Plaintiff - Appellee.
_____

Before **TYMKOVICH**, Chief Judge, **MURPHY**, and **McHUGH**, Circuit Judges.
_____

**McHUGH**, Circuit Judge.
_____

---

[*] The parties agree that oral argument is unnecessary and that the case may be submitted on the briefs. *See* Fed. R. App. P. 34(f). After examining the briefs and appellate record, this panel agrees that oral argument would not materially assist in the determination of this appeal. The case is therefore ordered submitted without oral argument.

Defendant Ryan Jacob Howard entered a guilty plea on three counts of transportation of stolen property in violation of 18 U.S.C. § 2314. During sentencing, Mr. Howard objected to the recommended restitution award for the second count, ordered under 18 U.S.C. § 3663A. This appeal concerns whether the court correctly used the replacement cost as the restitution value and correctly determined the value of the returned property to be zero. We hold that it did and affirm the district court.

## I. BACKGROUND

### A. *Factual History*

Between August 2015 and May 2016, Mr. Howard stole various pieces of laboratory equipment from Oklahoma State University ("OSU") and transported them to his apartment in Texas. The equipment included thermocyclers, pipettors, chromatography machines, and centrifuges. While attempting to steal another chromatography machine on May 19, 2016, Mr. Howard was arrested and police officers executed a search warrant on his vehicle, recovering a set of bolt cutters and various pieces of laboratory equipment. Later, on June 8, 2016, investigators executed a search warrant on Mr. Howard's residence in Texas. The investigators discovered many of the items Mr. Howard had stolen from OSU as well as equipment stolen from Northeastern Oklahoma State University. Investigators recovered most of the stolen items and returned them to the respective universities.

Some of the equipment, however, either was not returned or was in damaged condition when recovered. In particular, Mr. Howard stole a Fast Protein Liquid Chromatography machine ("FPLC machine") from the OSU Chemistry Department,

2

which was damaged. Mr. Howard stole the FPLC machine between March 18, 2016 and March 23, 2016, and returned it sometime after June 8, 2016. Mr. Howard does not dispute that he stole the FPLC machine, but he does challenge the value of the FPLC machine and its condition when it was returned.

### B. *Procedural History*

On July 20, 2016, Mr. Howard was indicted on three counts of transportation of stolen property in violation of 18 U.S.C. § 2314. He pleaded guilty to each of the three counts. The PSR for Mr. Howard recommended a term of imprisonment between twelve to eighteen months, supervised release after prison, and restitution of $25,212.50—$24,020 for the FPLC machine and $1192.50 for the pipettors.

Mr. Howard objected to the amount of restitution recommended in the PSR for the FPLC machine. Specifically, Mr. Howard contended that the FPLC machine was not damaged beyond repair and that the cost of a replacement machine was not the proper measure of restitution. During sentencing, Mr. Howard again objected to the restitution amount, challenging both the use of the replacement cost and the failure to assign any value to the parts returned to OSU.

At the time of sentencing, OSU was not able to produce any documentation related to the date of purchase or the value of the FPLC machine at that time. OSU no longer has any invoices related to the purchase of the FPLC machine or its related equipment. As a result, the only indication of the value of the stolen FPLC machine in the record is the statement in the Presentence Investigation Report ("PSR") that

3

"[i]nvestigative reports reflect the value of the stolen machine was $40,000." PSR at 4.

The government did advance uncontested evidence that researchers at OSU purchased the replacement for the FPLC machine for $24,020. It also offered evidence that the replacement machine is "not as advanced as the original equipment." *Id.* at 19.

The government additionally provided evidence from OSU that, when the FPLC machine was returned, it was damaged with "[p]arts of the machine . . . either broken or missing." *Id.* at 6. In its Declaration of Victim Loss, OSU claimed "the machine was damaged beyond repair," *id.* at 4 n.3, and "indicated the machine could not be repaired and was unusable for research purposes," *id.* at 18. In addition, a member of the OSU Police Department noted that "all the wires and hoses were cut and pieces were missing." *Id.*

Mr. Howard disagreed, claiming the machine was not "damaged beyond repair," *id.* at 18–19, and further asserting that, as returned to OSU, it has value for which he should have received credit. In support, Mr. Howard compared photographs of the equipment seized from his apartment to parts available from laboratory equipment sales websites and online auction websites. He claimed the prices of those advertised parts were reflective of the reasonable value of the returned FPLC machine. Based on his research, Mr. Howard asserted that the FPLC machine, when it was returned to OSU, was worth $5540. Thus, he argued his restitution obligation related to the FPLC machine should be reduced by that amount.

The district court rejected Mr. Howard's argument for a reduction in the restitution award, noting that the evidence presented by Mr. Howard concerned "refurbished" parts. Yet Mr. Howard presented no evidence concerning whether the parts "could be refurbished, how much time and effort it would take to refurbish them, how much the advertising or eBay costs would be, [or] how much employee time would be necessary" to sell the parts. App. III at 12. The district court therefore overruled Mr. Howard's objections to the restitution award. The court determined that the value of the stolen FPLC machine when returned to OSU was zero and set restitution for the FPLC machine at $24,020, the amount recommended in the PSR, which is the amount OSU paid for the replacement machine.

The district court entered judgment and Mr. Howard filed a timely appeal.

## II. DISCUSSION

Under the Mandatory Victims Restitution Act ("MVRA"), courts "shall order . . . that the defendant make restitution to the victim" of "an offense against property under this title." 18 U.S.C. §§ 3663A(a)(1), (c)(1)(A)(ii). Ordinarily, the return of the stolen property is the proper form of restitution but:

> (B) if return of the property . . . is impossible, impracticable, or inadequate, [the defendant shall] pay an amount equal to—
>
> (i) the greater of—
>
> (I) the value of the property on the date of the damage, loss, or destruction; or
>
> (II) the value of the property on the date of sentencing, less

5

> (ii) the value (as of the date the property is returned) of any part of the property that is returned.

*Id.* § 3663A(b)(1). The "burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government." *Id.* § 3664(e). "Restitution is not intended to punish defendants or to provide a windfall for crime victims, but rather to ensure that victims, to the greatest extent possible, are made whole for their losses." *United States v. Parker*, 553 F.3d 1309, 1323 (10th Cir. 2009). Furthermore, "the ordinary meaning of 'restitution' is restoring someone to a position he occupied before a particular event." *Hughey v. United States*, 495 U.S. 411, 416 (1990).

The term "value" in the MVRA is not defined. As such, courts have determined that a variety of different measures may be appropriate in determining "the value of the property." For example, the Second Circuit has suggested that "fair market value will generally provide the best measure to ensure restitution in the 'full amount' of the victim's loss." *United States v. Boccagna*, 450 F.3d 107, 109 (2d Cir. 2006). The court acknowledged, however, that "[i]n some circumstances, . . . other measures of value may better serve the MVRA's compensatory purpose." *Id.* We have cited *Boccagna* with approval and noted that its "approach allows the district court to determine in each circumstance the best measure of value for the purpose of calculating the actual loss in awarding restitution." *United States v. James*, 564 F.3d 1237, 1246 (10th Cir. 2009). We added the caveat that even the flexible approach suggested by the Second Circuit must fulfill the purpose of restitution and must not

"punish defendants or . . . provide a windfall for crime victims, but rather . . . ensure that victims, to the greatest extent possible, are made whole for their losses." *Parker*, 553 F.3d at 1323.

In determining the amount of loss, "a sentencing court may resolve restitution uncertainties with a view towards achieving fairness to the victim, so long as it still makes a reasonable determination of appropriate restitution *rooted in a calculation of actual loss*." *James*, 564 F.3d at 1246 (quotation marks omitted). Thus, in addition to fair market value, courts have approved the use of replacement cost, *see Boccagna*, 450 F.3d 109, foreclosure price, *see James*, 564 F.3d 1237, and cost to the victim, *see United States v. Wilfong*, 551 F.3d 1182, 1184 (10th Cir. 2008). Furthermore, we have noted that in some cases, "repair or restoration costs may be most appropriate." *Wilfong*, 551 F.3d at 1184 n.2. Thus, depending on the particular factual circumstances of each case, different measures of value may be appropriate and, perhaps, there may be multiple measures of value, each one of which may be appropriate.

Regardless of the valuation method chosen, "the controlling metric for an award of restitution pursuant to the MVRA *in every case* is *actual* loss suffered; nothing more, nothing less." *United States v. Ferdman*, 779 F.3d 1129, 1139 (10th Cir. 2015).

### A. *Standard of Review*

"We review the legality of a restitution order *de novo*, which involves reviewing the underlying factual findings for clear error and the amount of restitution imposed for

abuse of discretion." *United States v. Battles*, 745 F.3d 436, 460 (10th Cir. 2014) (citation omitted). Because the legality of the restitution order is not in question, the amount of restitution is reviewed for "clear error" and "abuse of discretion." "[A]warding restitution for an amount greater than the actual loss [suffered by the victim] constitutes an abuse of discretion." *Parker*, 553 F.3d at 1324.

## B. *Replacement Cost*

Mr. Howard contends that "courts generally limit replacement value to cases where the property that was lost, stolen, or destroyed has a unique value to the victim," Appellant Br. 12, and thus that "[o]rdering restitution for the cost of the replacement Fast Protein Liquid Chromatography machine exceeded the district court's statutory authority," *id.* at 13. Mr. Howard further argues that using the replacement cost instead of the market value of the machine "provide[s] a windfall for the victim." *Id.*

Mr. Howard argues that several other circuits have limited the application of replacement cost to special circumstances.[1] However, we do not read these cases so

---

[1] *See, e.g.*, *United States v. Kaplan*, 839 F.3d 795, 802–03 (9th Cir. 2016) (affirming use of replacement cost for clothing, furniture, and household appliances because "the fair market value is either difficult to determine or would otherwise be an inadequate or inferior measure of the value necessary to make the victim whole" and noting the personal nature of destroyed items); *United States v. Frazier*, 651 F.3d 899, 908–09 (8th Cir. 2011) (reversing the use of replacement cost for a destroyed home because replacement cost is appropriate where "the lost property is difficult to value" and is not "a fungible commodity with a viable market"); *United States v. Boccagna*, 450 F.3d 107, 116 (2d Cir. 2006) (finding replacement cost is appropriate where "the actual cash value of the damaged, lost, or destroyed property is difficult to ascertain—because an item is unique, or because there is not a broad and active market for it" (internal quotation marks omitted)); *United States v. Simmonds*, 235 F.3d 826, 832 (3d Cir. 2000) (approving the use of replacement cost for furniture because "furniture often has a personal value to its owners that cannot be captured or

narrowly.[2] But even if we were to understand the cases as Mr. Howard proffers, this circuit has thus far not limited replacement cost to unique or special items. On the contrary, even when dealing with fungible goods, such as cellular telephones, we have noted without further comment that a defendant stated at oral argument that "replacement costs was [sic] the proper measure of damages." *Ferdman*, 779 F.3d at 1140 n.5. This court has also noted that "[i]n some cases, replacement cost may be more appropriate" than other forms of valuation. *Wilfong*, 551 F.3d at 1184 n.2. We decline to so limit the district court's use of replacement cost as suggested by Mr. Howard here.

The overarching principle of the MVRA is to make victims whole. *Parker*, 553 F.3d at 1323 ("Restitution is . . . intended . . . to ensure that victims, to the greatest extent possible, are made whole for their losses."); *see also Hughey*, 495 U.S. at 416 ("[T]he ordinary meaning of 'restitution' is restoring someone to a position he occupied before a particular event."). Thus, in determining the proper amount of restitution, a district court may, for different types of property, determine that fair market value, replacement cost,

---

accurately estimated" through market value); *United States v. Shugart*, 176 F.3d 1373, 1375 (11th Cir. 1999) (affirming the use of replacement cost for the destruction of a church because "[a] church is not a fungible commodity. . . . A church is unique, and is valued by its members, precisely because of its location, its design, and the memories it evokes. None of these characteristics can be recreated by purchasing an alternate structure in another city or neighborhood, even if such a structure were available." (citations omitted)).

[2] For example, the cases may be read to provide examples of items that may be better valued using replacement cost to "make the victim whole" rather than proscribing the use of replacement cost in other situations. Only *Frazier* concludes "replacement value is appropriate in only certain, limited circumstances," 651 F.3d at 909, "particularly where the lost property is difficult to value" but "likely" not "where the lost or damaged property is a fungible commodity with a viable market," *id.* at 908.

9

foreclosure price, cost to the victim, repair or restoration costs, or another measure of value is most appropriate. For some types of property, one valuation method may be superior to another valuation method. Additionally, one particular valuation method may be superior to another method for the same type of property in different situations. This flexible "approach allows the district court to determine in each circumstance the best measure of value for the purpose of calculating the actual loss in awarding restitution." *James*, 564 F.3d at 1246. While particular factual scenarios may dictate the use of different measures of value, "the controlling metric for an award of restitution pursuant to the MVRA *in every case* is *actual* loss suffered; nothing more, nothing less," *Ferdman*, 779 F.3d at 1139, to ensure that the victim does not receive a windfall.

Here, OSU did not replace the stolen FPLC machine with a more expensive machine. The replacement machine is not more advanced or even a new unit of the same model. Rather, the replacement machine has less functionality and is less advanced. Thus, even accounting for depreciation of the stolen FPLC machine, the cost of the replacement machine did not provide a "windfall" to OSU. Indeed, the only evidence of the value of the stolen machine when new priced it at $40,000, which is much greater than the cost of the replacement machine. Under these facts, the replacement cost is "rooted in a calculation of actual loss," *James*, 564 F.3d at 1246 (emphasis omitted), and the district court acted well within its discretion in using the replacement cost as the restitution value.

## C. *Value of Returned Property*

Mr. Howard also argues the district court abused its discretion in determining that the stolen FPLC machine had no value when it was returned to OSU. Section 3663A(b)(1)(B) provides that the restitution value is:

> (i) the greater of—
>
> > (I) the value of the property on the date of the damage, loss, or destruction; or
> >
> > (II) the value of the property on the date of sentencing, less
>
> (ii) the value (as of the date the property is returned) of any part of the property that is returned.

While the MVRA explicitly places the burden of persuasion regarding the value of the victim's loss on the government, 18 U.S.C. § 3664(e), it is less clear where the burden of persuasion lies regarding any offset value—the value of any part of the property that is returned to the victim. The MVRA does state, however, that "[t]he burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires." *Id.*

Most circuits that have addressed this issue have held that the defendant has the burden of persuasion with regard to any offset value.[3] And although not directly

---

[3] The Second, Third, Fifth, Sixth, Seventh, and Eleventh Circuits have adopted this position, *see United States v. Smathers*, 879 F.3d 453, 460–61 (2d Cir. 2018); *United States v. Bryant*, 655 F.3d 232, 254 (3d Cir. 2011); *United States v. Sheinbaum*, 136 F.3d 443, 449 (5th Cir. 1998); *United States v. Elson*, 577 F.3d 713, 734 (6th Cir. 2009); *United States v. Malone*, 747 F.3d 481, 485–86 (7th Cir. 2014); *United States v. Foster*, 878 F.3d 1297, 1308 (11th Cir. 2018), while the Fourth and Ninth Circuits have adopted the contrary position, *see United States v. Mullins*, 971 F.2d 1138, 1147 (4th Cir. 1992) (interpreting prior version of the statute); *United*

11

on point, we addressed a similar issue in *United States v. Serawop*, 505 F.3d 1112 (10th Cir. 2007). There, Mr. Serawop argued that the restitution awarded after his conviction of voluntary manslaughter, which was based on the victim's projected future earnings, should be offset by gender-based and race-based statistics. *Id.* at 1125–26. That is, Mr. Serawop claimed accounting for the gender and race of the deceased child would significantly reduce the child's projected future earnings and thus the amount of his restitution. *Id.* at 1126. The district court held that the burden to establish any offset based on race and gender fell on Mr. Serawop, and further concluded he had not met that burden. *Id.* at 1126–27. On appeal, this court affirmed. We recognized that the initial burden of demonstrating the loss was on the government, but, citing *United States v. Ruff*, 420 F.3d 772, 775 (8th Cir. 2005),[4] we concluded Mr. Serawop bore the burden of proving any offset to that amount based on the gender or race of the victim. *Serawop*, 505 F.3d at 1127.

---

*States v. Yeung*, 672 F.3d 594, 601 (9th Cir. 2012), *abrogated on other grounds by Robers v. United States*, 134 S. Ct. 1854 (2014).

[4] It is somewhat uncertain in the Eighth Circuit which party bears the burden of proving an offset. *Compare United States v. Ruff*, 420 F.3d 772, 775–776 (8th Cir. 2005) ("The MVRA does not stipulate which party bears the burden of proving entitlement to an offset. The government bears the burden to prove the victim's loss, and the defendant bears the burden to prove financial resources and needs. On other matters, the burden 'shall be upon the party designated by the court as justice requires.' . . . If [the defendant] believes he can establish excess recovery by the [victim], he bears the burden to initiate further proceedings regarding any restitution offset."), *with United States v. Fonseca*, 790 F.3d 852, 855 (8th Cir. 2015) ("[O]n remand, the government must prove the proper amount of the reduction for [the returned property].").

12

While factually distinct, the logic of *Serawop* is applicable here. The government presented evidence that OSU incurred costs of $24,020 to replace the FPLC machine. To the extent Mr. Howard claimed he was entitled to an offset of that amount, he bore the burden of proving the amount of that offset. Because he did not calculate the expenses that would have been incurred to refurbish and sell the parts of the FPLC machine, Mr. Howard failed to meet his burden, and no offset was appropriate.

This approach is also consistent with our decision in *Parker*. There, Mr. Parker challenged the district court's determination that airplane engines he sold to the victims were worthless. 553 F.3d at 1324. According to Mr. Parker, the district court should have deducted the "core-value" of the engines from the amount of the restitution award. We agreed with the district court that the engines were properly assigned no value for four reasons. First, the evidence presented by Mr. Parker establishing the core-value of the engines was for "factory" engines—not for engines in "substantially worse shape." *Id.* Second, other evidence indicated that the engines were "essentially in such a state of disrepair that they were worthless" and "the victims were not in the position to sell the scrap engine parts." *Id.* at 1325. Third, the victims who paid to make the purchased engines airworthy did so at considerable cost—approximately two to three times the suggested "core-value" of the engine. *Id.* Finally, the losses suffered by the victims were greater than the amount paid for the engines. *Id.*

There are several parallels between *Parker* and the present case. As noted by the district court, Mr. Howard presented evidence of the prices of "refurbished" parts, not parts in the condition as returned to OSU.[5] As such, the prices may not reflect what OSU could actually obtain by selling the parts. Additionally, the "selling price" does not include advertising costs, online marketplace fees, hours required to sell the parts, or, perhaps most significantly, whether the parts even could be refurbished and the cost of doing so. Thus, as the district court noted, "despite the fact that some of these components might bring some value if they had their working parts, all of that is speculation." App. III at 12.

Furthermore, similar to *Parker*, the evidence produced by the government, contrary to Mr. Howard's evidence, suggests that the FPLC machine was "essentially in such a state of disrepair that [it was] worthless." 553 F.3d at 1325. Dr. Mohanty, who used the FPLC machine at OSU, stated the machine was damaged beyond repair and that parts of the machine were either broken or missing. And Sergeant Hart observed that "all the wires and hoses were cut and pieces were missing." PSR at 18.

Because Mr. Howard has the burden of persuasion on the value of the returned parts, the district court did not abuse its discretion in holding that the FPLC machine had no value when returned to OSU.

---

[5] The exhibits submitted by Mr. Howard demonstrate significant price variability between working and non-working component parts of the FPLC machine. For example, a fraction collector from a working lab may sell for $395 while a fraction collector that powers on but does not include functioning buttons and which has not been further tested was listed at $65.

## III. CONCLUSION

We AFFIRM the district court's use of the replacement cost of the FPLC machine and AFFIRM the district court's determination that the stolen FPLC machine had no value when returned to OSU.