# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-2173
_____

United States of America

*Plaintiff - Appellee*

v.

Jonathan Weber Arrington

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Central
_____

Submitted: January 12, 2024
Filed: April 3, 2024
_____

Before BENTON, ERICKSON, and KOBES, Circuit Judges.
_____

ERICKSON, Circuit Judge.

Jonathan Weber Arrington pled guilty to wire fraud, in violation of 18 U.S.C. § 1343. He now appeals his sentence and related order for restitution claiming: (1) the district court erred when it assigned him the burden of proof on any offset to the amount of restitution; (2) the district court failed to offset restitution by the value of payments he made toward the loss; and (3) the sentence imposed is substantively unreasonable. We affirm Arrington's sentence but vacate the restitution order and

remand with directions that judgment be amended to award restitution in the amount of $265,835.

## I. BACKGROUND

Between February 2019 and March 2021, Arrington was employed by Recon Roofing and Construction ("Recon") in Des Moines, Iowa, to handle Recon's finances and bookkeeping. He had sole control of Recon's QuickBooks program and was responsible for the company's finances, including keeping ledgers, handling payroll, and writing checks on Recon's behalf. When Arrington joined Recon, he received a minor (0.5%) ownership interest in the company, with the remaining interests held by founding partners J.M. (50.5%) and J.R. (49.0%).

Arrington began stealing from the company around August 12, 2019. He wrote checks to himself from the Recon account for funds to which he was not entitled. He covered up his fraud by coding the checks as legitimate business payments to Recon's contractors. Arrington also paid himself double his authorized salary, by writing one check to his personal direct deposit account and another to a phony company, Patriot Holdings, LLC, that he created for the sole purpose of receiving fraudulent payments. Relevant to the count of conviction, on March 17, 2021, Arrington wrote a check to himself for $4,880 and miscoded the corresponding entry in the QuickBooks ledger. All told, Arrington wrote 96 unauthorized checks to himself totaling $315,835.

Arrington was not the only person stealing from Recon. At some point, J.M. became aware that J.R. was stealing from the company. When J.R. left the company, Arrington's ownership interest grew. On April 15, 2020, J.M. and Arrington signed an amendment to Recon's operating agreement to reflect new ownership values for J.M. (55.0%) and Arrington (45.0%). J.M. made an initial cash contribution of $550 for 5,500 ownership units, while Arrington paid $450 for 4,500 units. Once J.M. discovered that Arrington, too, was stealing from the company, J.M. emailed Arrington and asked him to "make this right" or "do the right thing" and "sign the

business back." On March 25, 2021, Arrington signed a Unit Surrender Agreement, selling his 45.0% interest to J.M. for one dollar.

Arrington was charged with six counts of wire fraud. He pled guilty to Count Six, involving the March 17, 2021, check that he wrote to himself for $4,880. The government dismissed the remaining counts. As part of Arrington's plea, the parties agreed he was responsible for a loss amount of $315,835; however, they disagreed on whether the restitution amount should be offset by the value of shares Arrington sold back to J.M.

Prior to sentencing, the United States Probation Office prepared a Presentence Investigation Report ("PSIR") and calculated a total offense level of 18 and Criminal History Category III, resulting in a Sentencing Guidelines range of 33 to 41 months, with restitution to be determined by the district court. Although Arrington made several objections to the PSIR, the district court adopted the factual representations in the PSIR and found Arrington's Sentencing Guidelines range was 33 to 41 months.

Arrington argued to the district court that the surrender of his 45.0% interest should offset any loss amount. He provided an expert report that valued Recon at $1,099,148 on December 31, 2020, approximately three months before execution of the Unit Surrender Agreement. Based on this valuation, Arrington argued his 45.0% interest was worth $494,616.60, which should offset the total loss amount of $315,835 because Recon and J.M. were "made whole again" before criminal charges were filed. Arrington's expert explained at sentencing that his valuation of Recon was a weighted average of three approaches, but "significant evidence of fraud" caused him to question the validity of the tax returns on which he based the valuation, among other limitations.

The government emphasized that restitution should be ordered in the full amount of the loss because (1) Arrington was stealing from Recon when he was assigned the 45.0% interest; (2) Arrington sold his shares back to Recon on March

25, 2021; and (3) the expert valuation was speculative and irrelevant. The government offered testimony from Des Moines Police Sergeant Ian Lawler, who testified about the investigation and Arrington's sale of his 45.0% interest.

After considering the arguments of the parties, the evidence presented, and the 18 U.S.C. § 3553(a) factors, the district court imposed a sentence of 36 months' imprisonment and three years of supervised release. The issue of restitution was deferred.

On May 8, 2023, the district court issued its restitution order. The court determined it was the government's burden to prove the amount of loss sustained, but Arrington had the burden to establish any offset against that loss. The district court discounted Arrington's expert's valuation and instead determined Arrington's 45.0% interest was worth "something closer to $50,000." Because Arrington failed to show that he returned the shares as partial repayment toward the loss amount, the court determined that Arrington had failed to meet his burden of proving any offset. The court ordered restitution in the amount of $315,835, the full amount of the loss. Arrington appeals both the restitution order and the reasonableness of his sentence.

## II. ANALYSIS

We review *de novo* the district court's interpretation of the Mandatory Victims Restitution Act ("MVRA") to determine its obligations in awarding restitution. United States v. Frazier, 651 F.3d 899, 903 (8th Cir. 2011). Under the MVRA, the district court shall order restitution in cases involving fraud and "[t]he burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government." 18 U.S.C. § 3664(e); see also § 3663A. Where the defendant seeks to offset the loss amount, the MVRA directs that "[t]he burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires." Id.

Seven circuits—the Second, Third, Fifth, Sixth, Seventh, Tenth, and Eleventh—place the burden of proving any offset on the defendant. See United States v. Howard, 887 F.3d 1072, 1079, n.3 (10th Cir. 2018) (citing cases). While this Circuit has not resolved this precise issue, our precedent holds that the burden is properly assigned if it follows the MVRA directive, that is: "as justice requires." United States v. Ruff, 420 F.3d 772, 775-776 (8th Cir. 2005).

Here, the government proved the loss amount of $315,835 through documentary evidence and testimony. The parties agreed to this amount for the purpose of calculating Arrington's Sentencing Guidelines range. Notwithstanding this, Arrington asked the district court for an offset equal to the value of the shares he sold to J.M. on March 25, 2021. Arrington offered his own expert valuation of the company, in addition to providing an explanation and context for his surrender of the shares. Under the facts of this case, the district court did not err when it placed the burden on Arrington to prove the amount of offset he claimed was appropriate.

In addition to reviewing the district court's assignment of the burden, Arrington challenges the amount of restitution ordered. We review the decision to award restitution for abuse of discretion and factual findings for clear error. Frazier, 651 F.3d at 903. The district court determined the value of Recon shares returned to the company was $50,000—an amount supported by the record—but rather than reduce the loss amount by $50,000 to calculate restitution, the district court determined Arrington had failed to establish his intention behind the sale. Because evidence in the record shows that Arrington presented sufficient evidence to establish that he sold the shares as partial payment toward the loss amount, the district court clearly erred when it failed to offset the amount of restitution by the value of shares sold. The restitution awarded should have been reduced by $50,000 for a total amount of $265,835. We vacate the restitution order and remand with directions that judgment be amended to reflect a restitution award of $265,835.

Finally, Arrington challenges the substantive reasonableness of his sentence, which we review under a deferential abuse of discretion standard. United States v.

Godfrey, 863 F.3d 1088, 1094 (8th Cir. 2017) (citation omitted). Arrington argues the district court erred by failing to consider that he fully compensated Recon for the fraud. Although the restitution award should have been reduced by $50,000, nothing in the record suggests the district court gave any significant weight to the value of Arrington's shares when imposing his prison sentence. The district court did not determine the value of those shares until several weeks after it imposed Arrington's sentence. In determining the length of Arrington's sentence, the district court credited Arrington for his willingness to return all his shares, no matter their value. The record shows that the district court considered several other mitigating factors, including Arrington's prior military service and mental health concerns, and weighed them against aggravating factors such as the amount of loss, the position of trust within the company, Arrington's attempt to cover up the fraud, and his status on supervised release for another federal fraud conviction at the time of the offense. The district court neither abused its broad sentencing discretion when it imposed a within-Guidelines sentence nor imposed a substantively unreasonable sentence.

## III. CONCLUSION

We vacate the restitution amount and remand with directions for the district court to amend the judgment to reflect a restitution award in the amount of $265,835. We otherwise affirm the judgment of the district court.

KOBES, Circuit Judge, concurring in part and dissenting in part.

Because I would affirm the restitution award, I respectfully dissent.

I agree that Arrington bore the burden to prove an offset to restitution. To succeed, he had to show by a preponderance of evidence the value of the returned shares plus why—or more precisely, for what purpose—he returned them. *See United States v. Bush*, 252 F.3d 959, 962–63 (8th Cir. 2001); *United States v. Pugh*, 445 F.3d 1066, 1068 (8th Cir. 2006).

The district court found that Arrington did not establish that he sold back the shares for the purpose of partially repaying the stolen $315,835. The court observed that it was "equally possible" that Arrington was trying to "make right" the fact that he—a fraudster—never should have received a 45% interest in the company in the first place.[1]

I think the district court got this right. The majority disagrees. But our review of the district court's "equally possible" finding is limited to clear error. I cannot reach a "definite and firm conviction" that the district court made a mistake. *See United States v. White*, 41 F.4th 1036, 1038 (8th Cir. 2022) (citation omitted) (clear error review).

I otherwise concur in the court's opinion.

_____

---

[1]There was plenty of conflicting evidence on why Arrington returned the shares. He initially told the police that he had "no clue" what J.M. was talking about when J.M. told him to "do the right thing" by selling back his shares. He also said that he sold them back because he didn't want "any problems." And at sentencing, his lawyer told the district court, "It's pretty clear why he turned over his interest in the business for $1. He didn't want to get in trouble." *Cf. United States v. Campbell*, 765 F.3d 1291, 1302 (11th Cir. 2014) ("[A] fraudster may not receive credit for value that is provided to his victims for the sole purpose of enabling him to conceal or perpetuate his scheme."). Based on the shifting explanations, it's no wonder the court found that he failed to carry his burden.