FILED
**United States Court of Appeals**
**Tenth Circuit**

**February 10, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

GUNNAR MATHEW HEMINGWAY,

Defendant - Appellant.

Nos. 24-7076 & 24-7094
(D.C. No. 6:21-CR-00139-PRW-1)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **ROSSMAN**, **MURPHY**, and **FEDERICO**, Circuit Judges.
_____

## I.    INTRODUCTION[1]

Following a jury trial, the defendant-appellant, Gunnar Mathew Hemingway,

was convicted of arson in Indian Country. *See* 18 U.S.C. §§ 81, 1151, 1153. In

addition to his custodial sentence, Hemingway was ordered, pursuant to the

---

[*] After examining the briefs and appellate record, this panel determined unanimously that oral argument was not needed. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case was therefore submitted for disposition on the briefs. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Two cases have been consolidated for procedural purposes for this appeal: *United States v. Hemingway*, No. 24-7076, and *United States v. Hemingway*, No. 24-7094. As each case has its own appellate record, citations include case numbers for clarification.

Mandatory Victims Restitution Act, to pay $21,086 in restitution for a mobile home that was destroyed by the fire he started.[2] *See* 18 U.S.C. § 3663A(b)(1)(B). On appeal, Hemingway challenges the restitution amount, arguing the district court abused its discretion by adopting an inflated assessment of the mobile home's value.

The district court, acting within its discretion, determined the fair market value of the mobile home was an appropriate measure of loss to determine restitution. *See United States v. Howard*, 887 F.3d 1072, 1078 (10th Cir. 2018). The district court's assessment of the property's fair market value, although higher than that proposed by the defendant, is supported by the evidence in the record. *See United States v. Julian*, 242 F.3d 1245, 1248 (10th Cir. 2001). Therefore, exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **affirms** the judgment of the district court.

## II.    BACKGROUND

### A.    Offense Conduct

On May 21, 2020, the Choctaw County Sheriff's Office responded to reports of a possible shooting in or around a mobile home located in Hugo, Oklahoma.[3] When the officers arrived, there was smoke coming from a fire which had started in

---

[2] The district court also ordered restitution for personal belongings inside the home (e.g. clothes, cellphone, and kitchen items) which were destroyed by the fire. Only the restitution concerning the mobile home is relevant to this appeal.

[3] Hugo, Oklahoma, a city located within the boundaries of the Choctaw Nation Reservation, is considered part of Indian Country. *See* 18 U.S.C. §§ 1151 (defining "Indian Country"), 1153 (establishing federal jurisdiction for certain criminal offenses committed in Indian Country).

the kitchen of the mobile home. Found inside the mobile home was the defendant's

father, Rusty Hemingway, who had died of a gunshot wound to his neck. Three

witnesses revealed that the defendant had told them all to leave the premises so he

could burn down the mobile home. The mobile home was completely destroyed by

the fire.

The defendant was indicted[4] on four counts:

- Count One: Murder in Indian Country pursuant to 18 U.S.C. §§ 1111(a), 1151, 1153;

- Count Two: Causing the death of a person in the course of violating 18 U.S.C. § 924, pursuant to 18 U.S.C. § 924(j)(1);

- Count Three: Use, carry, and discharge of a firearm during and in relation to a crime of violence, pursuant to 18 U.S.C. § 924(c)(1)(A)(iii); and

- Count Four: Arson in Indian Country, pursuant to 18 U.S.C. §§ 81, 1151, 1153.

In a pretrial motion, Hemingway declared his intent to raise self-defense as an

affirmative defense against Counts One, Two, and Three. During the trial,

Hemingway testified he and his father had argued that morning and, believing Rusty

would kill him, he shot Rusty. The defendant then admitted he covered his father's

body with a blanket and set the mobile home on fire.

---

[4] After its initial filing, the indictment was amended to correct typos and misspellings pursuant to the district court's order The charges brought against the defendant remained constant.

The jury found Hemingway guilty of arson in Indian Country, but not guilty of the remaining charges. He was sentenced to sixty months of imprisonment, followed by three years of supervised release.

### B.    Restitution

The district court held a separate hearing to address restitution. In its sentencing memorandum, the government initially sought $155,057.48 in restitution for the mobile home. The valuation for the mobile home, the government explained, was based on an estimate provided by the original maker of the mobile home for what a similar model would cost. Hemingway urged the district court not to order any restitution, contending the government had failed to identify a victim to whom the statute required payment.

Closer to the restitution hearing, however, both sides changed their respective positions. Based on an estimate obtained from the J.D. Power & Associates website,[5] the government submitted the restitution for the mobile home should be $30,232.10. In response, the defendant conceded restitution was required but claimed $5,298 was a more accurate assessment of the mobile home's value. Hemingway's position was based on the mobile home's valuation included in the tax assessment conducted by the Choctaw County Assessor's Office ("Assessor's Office") in 2020.

---

[5] During the restitution hearing, the government explained that J.D. Power, as part of the National Automobile Dealer's Association, offers an online tool on its website through which users may obtain a valuation report or an appraisal of manufactured homes.

During the restitution hearing, the government offered, among other evidence, the testimony of Rhonda Cahill, the Choctaw County Assessor. She explained how her office values property within its jurisdiction for tax assessment purposes. According to Cahill, a visual inspection was conducted once every four years, during which an assessor would evaluate the property's exterior condition and characteristics, such as occupancy, material, design, and dimensions. The data gathered from the inspection was inputted into an assessment system,[6] which would then produce a valuation. The Assessor's Office called this the "fair cash value" of the property. No. 24-7094, ROA Vol. III at 51. In the years between inspections, a property's fair cash value would be based on its most recent visual inspection and then adjusted for depreciation. Cahill confirmed the most recent visual inspection of the mobile home was completed in 2017, and its fair cash value was assessed at $5,298 in 2020.

After 2020, she added, the Oklahoma Tax Commission introduced a new system of assessing property ("the new system"). When asked about the new system, Cahill responded that properties in Choctaw County had been assessed "extremely below value" prior to its implementation. *Id.* at 49. The new system, she continued, provided a more accurate valuation of properties based on improved technology. For

---

[6] During the restitution hearing, Cahill referred to this as the "CAMA system." She explained this was a "system with an algorithm built into it" used to determine a property's "replacement cost minus depreciation" based on factors such as quality, material, improvements, and exterior features. No. 24-7094, ROA Vol. III at 42, 45.

example, the new system was capable of factoring in possible appreciation of property value based on the increased cost of building materials. Cahill testified that, based on the record of its visual inspection from 2017, the mobile home would have been assessed at $21,086 under the new system.

Ultimately, the district court ordered $21,086 in restitution for the destroyed mobile home. In its ruling, the district court made clear the restitution amount of $21,086 represented the fair market value of the mobile home. Hemingway timely appealed.

## III.    **DISCUSSION**

Hemingway challenges the district court's restitution order. The court reviews "the legality of a restitution order de novo, the district court's factual findings for clear error, and the amount of restitution for abuse of discretion." *United States v. Parker*, 553 F.3d 1309, 1323 (10th Cir. 2009).

For certain offenses against property, the Mandatory Victims Restitution Act requires the district court to order as restitution 1) the return of the relevant property to its owner, or, if such return is, inter alia, impossible, 2) payment to the victim for the value of the property minus any value of any part of the property that is returned. *See* 18 U.S.C. § 3663A(b)(1)(A)-(B). On appeal, Hemingway focuses on the restitution amount, arguing the district court abused its discretion by ordering payment of $21,086 for the mobile home.

"Under the abuse of discretion standard, the decision of a trial court will not be disturbed unless the appellate court has a definite and firm conviction that the lower

6

court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *In re Nat. Gas Royalties Qui Tam Litig.*, 845 F.3d 1010, 1017 (10th Cir. 2017) (quotation omitted). "A district court abuses its discretion when it renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. Landers*, 564 F.3d 1217, 1224 (10th Cir. 2009) (quotation omitted).

Return of the mobile home is impossible because it was destroyed by the fire. Hemingway must therefore pay the greater of 1) "the value of the property on the date of the damage, loss, or destruction" or 2) "the value of the property on the date of sentencing." 18 U.S.C. § 3663A(b)(1)(B)(i)(I)-(II). The government bears the burden of establishing the loss amount by a preponderance of the evidence. *Id.* § 3664(e). Because the statute does not define the term "value," the district court may "determine in each circumstance the best measure of value" of the property. *United States v. James*, 564 F.3d 1237, 1246 (10th Cir. 2009). The district court, however, "may not order restitution in an amount that exceeds the actual loss caused by the defendant's conduct." *Id.* at 1243; *see Parker*, 553 F.3d at 1324 ("[A]warding restitution for an amount greater than the actual loss constitutes an abuse of discretion.").

The district court explained the restitution amount reflected its assessment of the mobile home's fair market value. It was within its discretion to adopt the fair market valuation of the property as the appropriate measure of loss in this case.

7

*Howard*, 887 F.3d at 1078 (identifying "fair market value" as one valuation method by which a district court may determine § 3663A restitution).

The government offered the J.D. Power estimate of $30,232.10 as the replacement cost for the mobile home. The J.D. Power estimate, the government explained, showed what "it would cost to have a brand-new modular home that's similar to the one that burned down." No. 24-7094, ROA Vol. III at 78. Cahill, the Choctaw County Assessor, testified that, had the mobile home not been destroyed, its fair cash value would have been assessed at $21,086 under the new system. She acknowledged there may be differences in fair market value and fair cash value not only based on market conditions, but also because a typical real estate appraisal, unlike the tax assessment conducted by her office, often incorporates data from inspection of the property's interior. Nevertheless, Cahill also testified there were taxpayers in Choctaw County who had previously sold their property at its fair cash value.

Hemingway maintains the restitution amount should stem from the 2020 assessment of $5,298, rather than any subsequent valuation. He asserts the actual value of the mobile home could only have diminished since that time, given the lack of any significant improvements to the property. Hemingway insists the new system produced a bloated valuation because incorporated into its calculation is the post-pandemic inflation for cost of building materials. Underlying this position are two main premises: first, the increased cost of building materials should not affect the

calculation of actual loss in this case and, second, the 2020 assessment more accurately depicts the value of the property.

The actual loss in this case is gauged by the value of the mobile home. *See United States v. Ferdman*, 779 F.3d 1129, 1133 (10th Cir. 2015) ("[T]he [Mandatory Victims Restitution Act] allows recovery of losses actually caused by the defendant's offense." (quotation omitted)). A property's fair market value tends to fluctuate based on market conditions, including cost and demand. *Cf. United States v. Petty Motor Co.*, 327 U.S. 372, 377-78 (1946) (holding that market value fluctuates based on "general demand for the property"); *see also Fair Market Value*, Black's Law Dictionary (12th ed. 2024). Indeed, the language of 18 U.S.C. § 3663A(b)(1)(B) contemplates a property's value may change between the time of the offense and the time of sentencing; the provision also mandates the district court to order restitution equal to the greater of the two amounts. Although Hemingway emphasizes the magnitude of difference between his proposed valuation of the mobile home and the restitution amount, that does not establish an abuse of discretion. *See Howard*, 887 F.3d at 1078 ("[O]ne particular valuation method may be superior to another method for the same type of property in different situations.").

According to Cahill, before the implementation of the new system, properties in Choctaw County had been assessed "extremely below value." No. 24-7094, ROA Vol. III at 49. She opined that the new system provided a more accurate valuation of properties than the system used in 2020. Hemingway offers no evidence to support his criticism of the new system and the district court's consideration of the valuation

9

under the new system. Cahill further testified homes in Choctaw County had been sold at their fair cash value. The district court apparently credited this testimony, accepting the fair cash value of the mobile home at the time of the restitution hearing as its fair market value at the time of the sentencing hearing.[7] *See United States v. Wilfong*, 551 F.3d 1182, 1186 (10th Cir. 2008) (requiring only a "reasonable estimate" of the loss amount in ordering restitution); *Parker*, 553 F.3d at 1323 ("The determination of an appropriate restitution amount is by nature an inexact science."). The resulting restitution award does not amount to an abuse of discretion.

Hemingway's remaining arguments are unpersuasive. He suggests the $21,086 valuation may include the value of the land on which the mobile home sat and argues such a valuation would be erroneous because the land itself was not destroyed. Cahill, however, repeatedly clarified the $21,086 valuation represented only the fair cash value of the mobile home. *E.g.*, No. 24-7094, ROA Vol. III at 51, 56. In

---

[7] Pursuant to § 3663A(b)(1)(B), Hemingway must pay, as restitution, the greater of 1) the value of the property on the date of the loss or 2) the value of the property on the date of sentencing. In this case, the sentencing hearing was held on August 9, 2024, while the restitution hearing was held on October 18, 2024. Cahill testified that, had the mobile home remained on the tax roll on the day of the restitution hearing, its fair cash value would be $21,086.

The defendant does not raise any appellate arguments pertaining to the gap in time between the sentencing hearing and the restitution hearing. Regardless, it is unlikely Cahill would have presented a materially different assessment had she testified during the sentencing hearing. She obtained the $21,086 valuation by inputting the record of the mobile home's quality and condition as evaluated in 2017, into the new system introduced in 2020. There is nothing to suggest the inputs or the assessment system would have changed significantly between the sentencing hearing and the restitution hearing.

particular, she explained the value of the land was a separate matter when describing how her office would calculate tax liability for property sales. *See id.* at 52-53.

The defendant also claims the Assessor's Office introduced the new system to take advantage of the pandemic-related inflation and increase tax revenue in Choctaw County. The purpose of this new system, Hemingway posits, is untethered from obtaining the actual value of the mobile home and cannot be relied upon. This speculative argument, however, does not challenge the admissibility of Cahill's testimony nor establish "a clear error of judgment" in how the district court considered this evidence. *In re Nat. Gas Royalties Qui Tam Litig.*, 845 F.3d at 1017.

Finally, Hemingway argues the $21,086 valuation ignores Oklahoma law which caps property value increases by 3% annually. The Oklahoma Constitution provides the fair cash value of any parcel of locally assessed homestead property may only increase up to three percent in any taxable year.[8] Okla. Const. art. X § 8B. This provision caps the annual increase in valuation of real properties for ad valorem taxation purposes. *See Icon at Norman Apartments, LP v. Warr*, 577 P.3d 259, 261-62 (Okla. 2025) (providing relevant background). Hemingway fails to clarify, with sufficient specificity, how this provision limits what the district court may consider in determining a property's fair market value for the purposes of a restitution order.

---

[8] Because neither party identified the legal authority for this proposition, the court assumes the defendant's argument is based on § 8B of Article X of the Oklahoma Constitution.

*See United States v. De Vaughn*, 694 F.3d 1141, 1155 (10th Cir. 2012) ("[A]rguments inadequately briefed in the opening brief are waived." (quotation omitted)).

## IV.    CONCLUSION

Because Hemingway fails to establish an abuse of discretion by the district court, the district court's judgment is **affirmed**.

Entered for the Court


Michael R. Murphy
Circuit Judge